# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs October 3, 2000

## STEPHEN W. MURPHY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 98-B-1111     J. Randall Wyatt, Jr., Judge**

---

### No. M2000-00014-CCA-R3-PC - Filed December 7, 2000

---

The petitioner appeals as of right from the Davidson County Criminal Court's denial of post-conviction relief. The petitioner pled guilty in 1998 to two counts of theft and was sentenced as a career offender to twelve years for D felony theft and six years for an E felony theft. The sentences were statutorily required to be served consecutively. Petitioner filed a timely *pro se* petition seeking post-conviction relief, alleging ineffective assistance of counsel and involuntary and unknowing guilty pleas. After an evidentiary hearing, the post-conviction court denied relief. Based upon our review, we affirm the post-conviction court's denial of the petitioner's request for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Jefre S. Goldtrap, Nashville, Tennessee, for the appellant, Stephen W. Murphy.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Philip H. Wehby, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Stephen W. Murphy, entered a guilty plea on July 13, 1998, in Davidson County Criminal Court to theft of property valued at $1,000 or more but less than $10,000, a Class D felony; and theft of property valued at more than $500 but less than $1,000, a Class E felony. According to a plea agreement, he was sentenced as a career offender to twelve years for the D

felony theft and six years for the E felony theft, for an effective sentence of eighteen years in the Department of Correction. By statute, the sentences were required to be served consecutively.[1]

On September 8, 1998, the petitioner filed a *pro se* petition for post-conviction relief, alleging the following:

I. That he received ineffective assistance of counsel; and

II. That his guilty plea was unknowing and involuntary.

New counsel was appointed. On January 27, 1999, petitioner, through counsel, filed a motion to withdraw his guilty plea, alleging various grounds for relief, including, apparently, his alleged intoxication at the time of the pleas.[2] The judgment, having been entered on July 13, 1998, was final at this point and his motion, therefore, was not timely. The trial court chose to address the motion on the merits, pursuant to Rule 32(f) of the Tennessee Rules of Criminal Procedure.[3] On February 25, 1999, after a hearing, the trial court denied the motion to withdraw guilty plea, concluding that no "manifest injustice" required permitting the petitioner to withdraw his guilty plea.

On August 20, 1999, the petitioner resumed his post-conviction petition action and filed an amendment to his original petition, alleging, in greater detail, that he received ineffective assistance of counsel and that his guilty plea was not entered knowingly and voluntarily.[4] After a full hearing, the post-conviction court entered a memorandum order finding that the petitioner had received

---

[1] Petitioner was released on bond for the first theft when he committed the second theft. Having been convicted of both, the petitioner was subject to the provisions of Tennessee Code Annotated Section 40-20-111(b), which mandates consecutive manner of service.

[2] Neither this motion, nor the transcript of the hearing on the motion held on February 11, 1999, was included in the record on appeal.

[3] Controlling law in Tennessee concerning the withdrawal of a guilty plea is set out in Tennessee Rules of Criminal Procedure as follows:

> Withdrawal of Plea of Guilty.—A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea.

Tenn. R. Crim. P. 32(f). Therefore, the trial court, technically, did not have jurisdiction under Rule 32(f), judgment having been final for some six months. In this case, the issue is not determinative because petitioner filed his petition seeking post-conviction relief within the one-year statute of limitations pursuant to Tennessee Code Annotated Section 40-30-202(a) (1997).

[4] Tennessee Code Annotated Section 40-30-206(e) states that "Counsel may file an amended petition within thirty (30) days of appointment." The record indicates that the trial court accepted the amendment well outside this time period.

effective assistance of counsel and that the guilty pleas were entered knowingly and voluntarily. Therefore, the post-conviction court denied the petition on November 29, 1999. It is this denial that is the subject of the present appeal.

After a careful review of the record before this court, we conclude that the petitioner has failed to meet his burden of showing by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty pleas were entered unknowingly and involuntarily. The judgment of the post-conviction court is affirmed.

## FACTS

The facts of this case appear in the transcripts of the guilty plea proceedings; the post-conviction hearing; and the post-conviction court's order denying the petition. According to the State, in July of 1997, the petitioner was working at the Baptist Sunday School Board, Aramark Food Preparation Service in Davidson County. The victim in this case, Kathryn Comer, was a coworker. At the end of her workday, July 11, 1997, Ms. Comer went to the parking lot to leave, only to discover that her 1989 Ford Mustang was missing.[5] She called Metro Police and reported that her vehicle had been stolen. Later that same evening, two Metro officers spotted the stolen car in an area close to the residence of the petitioner and pulled it over. The petitioner was the driver of the car.

The petitioner first claimed that the car belonged to his brother. After the officers recovered registration papers from the glove compartment showing the owners as Mr. and Mrs. Comer, the petitioner changed his story and claimed that he had gotten the car from "two dudes." The petitioner was arrested; a preliminary hearing was held; and the petitioner was placed on bond.

On August 1, 1997, two events occurred: the petitioner was terminated from his job at the Baptist Sunday School Board, and Ms. Comer's 1989 Ford Mustang was stolen again. Some three weeks later, Jackson County police stopped a Ford Mustang for speeding in Gainsboro, Tennessee. Registration papers again indicated that the owners were Mr. and Mrs. Comer, and a check revealed that the car was stolen. This time, the petitioner was a passenger in the car. He stated to police that he knew the owner of the car, that he worked with the owner, and that she had given him permission to have the car. The victim was prepared to testify that this was not true. The petitioner was again charged with theft and released on bond.

Richard Tennent, an assistant public defender in Nashville, was assigned to the petitioner's case. Over the months of his representation of the petitioner, the State made a number of plea bargain offers, each one of which Tennent relayed to the petitioner. Tennent testified at the post-conviction hearing that the State's offers, initially quite favorable, became increasingly unfavorable, but that the petitioner refused to accept any offer until the one he ultimately accepted on the day of trial—the one for eighteen years as a career offender that he is presently serving.

---

[5]The State claimed that the value of the vehicle was $4,000.

## ANALYSIS

### Issue I.  Ineffective Assistance of Counsel

The petitioner argues that he received ineffective assistance of counsel and that, but for that deficient representation, he would not have entered pleas of guilty to the two theft charges he faced. The petitioner argues specifically the following:

> 1.  That counsel failed to investigate certain witnesses supposedly favorable to the defense and therefore counsel was not prepared for trial;
>
> 2.  That counsel failed to allow sufficient time to meet with the petitioner;
>
> 3.  That counsel failed to stop the guilty plea proceeding when he knew, or should have known, that the petitioner was intoxicated; and
>
> 4.  That counsel incorrectly advised the petitioner concerning the admissibility of his past criminal record at trial.

In elaborating upon the requirement that an accused is entitled to constitutionally effective assistance of counsel, the United States Supreme Court, in Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  The Tennessee Supreme Court has often recited the two prong test set forth in Strickland to be applied to ineffective assistance claims:

> To prevail on a claim of ineffective counsel in this proceeding, the appellant must prove by a preponderance of the evidence that the advice given or services rendered by his counsel fell below the range of competence demanded of attorneys in criminal cases.  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  He must also demonstrate prejudice by showing a reasonable probability that but for counsels' error, the result of the trial proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996).

King v. State, 989 S.W.2d 319, 330 (Tenn. 1999).

When determining whether counsel's performance was deficient, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). In summary, a reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. Moreover, with respect to the prejudice prong of the Strickland analysis, the petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Id.; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App.), perm. app. denied (Tenn. 1998).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the petitioner makes an insufficient showing on one." Id. 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. See Hodges v. S. C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App.), perm. app. denied (Tenn. 1990). However, the appellate court's review of the application of the facts to the law is *de novo* without a presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

### A. Trial Preparedness

First, the petitioner asserts that counsel, Richard Tennent, failed to investigate certain witnesses who were friends of the petitioner and could supply alibi testimony and other generally favorable testimony to corroborate his allegation that he was simply returning the car on the date of the first theft. Petitioner asserts, additionally, that the victim was prepared to testify on his behalf. Tennent testified that the petitioner did tell him of these potential witnesses, but on Thursday before trial was set for Monday, July 13, he still had no last names, telephone numbers, or addresses. Tennent discussed informally with Assistant District Attorney General Bret Gunn and the trial judge the possibility of General Gunn's trying another case before the petitioner's to allow Tennent time to talk with the witnesses. He told the petitioner to come to his office on Friday before trial with all

the missing information. Tennent testified that he planned to work as many hours as necessary over the weekend to be ready for trial.

When asked if the petitioner supplied the necessary information concerning the witnesses, Tennent testified to the following:

> A. No, he didn't. In fact, he didn't show up Friday. And I lost all touch with him over the weekend, though I repeatedly called all of his phone numbers that I had. And my understanding was he had left town.
>
> Q. Okay. When was the next contact you had with him pertaining to his trial?
>
> A. He showed up five minutes before the docket call Monday morning.

The petitioner's testimony directly contradicted Tennent's concerning the Friday meeting. The petitioner testified that he did show up for the meeting but that Tennent told him that he had all the information he needed from the petitioner and that they would meet on Monday morning.[6] The petitioner further testified that he was not out of town but at a family reunion and then a housewarming and that when he got the message that Tennent was urgently trying to reach him, he called the only number he had for Tennent, his office number, on Sunday and left a message.

The trial court concluded the following concerning Mr. Tennent's representation:

> He kept in contact with the petitioner, reviewed the discovery and listened to the tape of the preliminary hearing. Any lack of preparation for trial, can be imputed to the failure of petitioner to maintain contact with Mr. Tennent and supply him the information necessary to contact the witness' [sic] which petitioner felt may help his cause.

Not only do we agree that the petitioner has failed to show that counsel's assistance in regard to location of witnesses and preparedness for trial was ineffective, but we further conclude that the petitioner has failed to show that if the witnesses had been available, he would have chosen to go to trial. The victim was in the courtroom at the time of the plea submission, and nothing in the record indicates that the petitioner found this fact of any significance as far as his choosing to go to trial rather than plead guilty. Alibi testimony seems inappropriate, given the fact that the petitioner does not contend that he was not the person the police arrested twice in the same stolen Ford Mustang.

---

[6]The only names of potential witnesses the petitioner advised Tennent of, according to the petitioner, were the names of his former employer and of the victim.

Moreover, petitioner failed to present any material witness at the post-conviction hearing who either could have been found by reasonable investigation or who would have testified favorably in support of his defense. See Black, 794 S.W.2d at 757. This issue is without merit.

## B. Sufficient Time With Petitioner

This issue is closely related to the petitioner's claim that his counsel was unprepared for trial. Petitioner asserts that he met with counsel "three or four" times prior to trial and that the meetings were "approximately ten to fifteen minutes long."[7] Petitioner alleges that this amount of time was insufficient for counsel to prepare for trial and that, as a result, petitioner was forced to accept an unfavorable plea agreement rather than proceed to trial unprepared. Mr. Tennent testified that he and petitioner met "a number of times," but that he could not remember an exact number. Tennent testified that he relayed each of the State's offers to the petitioner, and they discussed the petitioner's version of the facts and reviewed the discovery materials and petitioner's criminal record. Tennent tried repeatedly to contact the petitioner over the weekend before the trial but was told by someone he assumed to be a family member at petitioner's home, that petitioner was out of town for the weekend. Tennent considered the petitioner to have "vanished" and was actually surprised that he showed up minutes before his trial was to begin.

The petitioner has failed to show that the number of meetings he had with counsel was so deficient as to constitute ineffective assistance of counsel. Nothing in the record indicates that Tennent failed to meet with the petitioner and keep him informed. Although the petitioner claims to have met with counsel on the Friday before trial, the post-conviction court accredited the testimony of Tennent, which was that the petitioner failed to show up for the Friday meeting and that, as a result, Tennent felt underprepared for trial since the possibility of favorable witnesses had not been resolved. The full names and locations of these witnesses were information that the petitioner failed to make available to counsel before trial date. Having created the problem, petitioner cannot now reasonably claim prejudice. We conclude that this issue is without merit.

---

[7]This estimate, as stated in petitioner's amended post-conviction petition, is inconsistent with an estimate of duration of meetings of "four or five minutes," as stated in petitioner's appellate brief.

### C. Failure to Halt Proceedings

The petitioner's third allegation in support of his ineffective assistance of counsel claim is that Tennent knew, or should have known, that petitioner was intoxicated on the day of the guilty plea proceeding. Petitioner testified that he had been drinking heavily all weekend prior to his trial date on Monday, July 13, 1998. Tennent testified that the petitioner smelled of alcohol and cigarettes when he arrived at the courthouse prior to his trial. Tennent questioned the petitioner concerning alcohol or drug use and petitioner told him that "he was not under the influence of anything at that time, that he felt clear-headed." Tennent testified further as follows:

> Q. Let me ask you this, Mr. Tennent: Would you have allowed Mr. Murphy to enter a plea if you believed he was intoxicated that morning?
>
> A. No, I wouldn't have.

The post-conviction court stated that there was simply no credible evidence to suggest that the lingering effects of alcohol influenced the petitioner's guilty pleas and that, "[t]he Court remains of the opinion that the plea was not affected by any lingering effect the alcohol may have had."

We conclude that the evidence in the record does not preponderate against the findings of the post-conviction court. This issue is without merit.

### D. Erroneous Advice Concerning Admissibility of Evidence

Finally, the petitioner asserts that his counsel failed to explain to him that evidence of his prior criminal record could come in at his trial only if he testified, and that he had the right to choose not to testify. This failure, according to petitioner, constitutes ineffective assistance of counsel. Petitioner does not contest the fact that the trial court made his right to testify, or not, perfectly clear to him during the plea submission colloquy.

To meet his burden of showing that he was prejudiced by what he asserts was a failure of counsel, petitioner must show that if he had known that he could chose not to testify and thus keep knowledge of his criminal record away from the jury, he would have gone to trial. This assertion presumes that without evidence of his prior convictions, the State would have had a difficult time convicting him. In fact, the record shows that the State's evidence was substantial. Mr. Tennent testified that, even had he been able to put on proof that the petitioner was trying to return the car in the first count, "I never did have an adequate defense to explain why he would have taken somebody's car a second time after being wrongfully accused of stealing it the first time." We conclude that the petitioner suffered no prejudice as a result of his supposed misunderstanding concerning the admissibility of evidence of his prior criminal record.

The post-conviction court stated the following:

The Court is of the opinion that Richard Tennent is an experienced and competent criminal defense attorney whose representation of petitioner was well within the range of competence demanded of criminal defense attorneys. It is evident to the Court from testimony at the hearings that, under the circumstances of this case, Richard Tennent performed conscientiously in his representation of the petitioner. The Court further finds, that Richard Tennent conducted a competent investigation of the petitioner's case, and discussed with the petitioner the State's evidence, as well as the potential punishment he faced upon conviction. In short, the Court finds no credible evidence to support the petitioner's assertion of deficient representation and, obviously, no resulting prejudice to his decision to plead guilty. In reaching its conclusion, the Court accredits the testimony of Richard Tennent.

We conclude that the record fully supports the determination of the post-conviction court that the petitioner received effective assistance of counsel.

### Issue II. Knowing and Voluntary Guilty Plea

The petitioner finally asserts that his guilty pleas were not entered knowingly and voluntarily because he was under the influence of alcohol to so great an extent that "his state of mind, being under the influence of alcohol, rendered his plea unknowing and involuntary."

In determining whether a plea of guilty was voluntarily, knowingly, and intelligently entered, this court, like the trial court, must consider all relevant circumstances that existed at the entry of the plea. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995), perm. app. denied (Tenn. 1996). A reviewing court may look to any relevant evidence in the record to determine the voluntariness of the plea. See id. The guilty plea process in Tennessee is controlled both by Rule 11 of the Tennessee Rules of Criminal Procedure and by case law, specifically, two decisions of our supreme court, State v. Mackey, 553 S.W.2d 337 (Tenn. 1977)[8], and State v. McClintock, 732 S.W.2d 268 (Tenn. 1987). Trial judges are required to adhere substantially to the procedure prescribed in Rule 11. A submission hearing transcript must establish on its face that the trial court substantially complied with the requirements of Rule 11, as well as the constitutional standard set out in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the teachings of Mackey and McClintock.

At the guilty plea proceeding in this case, the trial court questioned the petitioner concerning the petition to enter plea of guilty form petitioner had signed and asked, "Did you go over each and every part of that petition to enter a plea of guilty, Mr. Murphy, and do you think you understand exactly what you're doing here this morning?" Petitioner responded affirmatively. That form, signed

---

[8]Since Mackey was decided on June 20, 1977, prior to the effective date of the Tennessee Rules of Criminal Procedure (July 13, 1978), portions of that decision have been superseded by the rules. See State v. Brandon Wilson, No. E1996-00006-SC-R11-CD, 2000 WL 1336633, at *6 (Tenn. Sept. 18, 2000).

by the petitioner on July 13, 1998, included the following declaration: "I declare that during my discussion with my lawyer about this case, and while I read and/or discussed this petition with my lawyer, I was not under the influence of any alcoholic beverage or intoxicating drug." Nothing on the face of this form indicates that the petitioner was incapacitated by alcohol. Having also concluded above that nothing in the record as a whole suggests that any lingering effects of alcohol influenced the petitioner's plea, we conclude that this issue is without merit.[9]

## CONCLUSION

The evidence in the record fully supports the findings of the post-conviction court. We conclude that the petitioner received effective assistance of counsel and entered his guilty pleas knowingly and voluntarily. We affirm the post-conviction court's denial of the petitioner's request for post-conviction relief.

 

_____
ALAN E. GLENN, JUDGE

---

[9]The petitioner points to questions that the trial court failed to ask him at the plea submission hearing and alleges, without arguing it, that such failure also rendered his guilty plea unknowing and involuntary. The question was whether he agreed with the facts of his case as presented by the State. The question noted above is occasionally asked by trial courts, but a careful reading of Tennessee Rule of Criminal Procedure 11(c)-(d) and relevant case law indicates that it is not required. As a supervisory, at the most, rather than a constitutionally based requirement of the trial court, it cannot be addressed under the Post-Conviction Procedure Act. See Hicks v. State, 983 S.W.2d 240, 247 n.10 (Tenn. Crim. App.), perm. app. denied (Tenn. 1998) (advising a defendant that answers to the court's preguilty plea questions must be under oath and false answers can later be used in a perjury prosecution, as well as questions about whether the plea resulted from conversations with the defense attorney and the district attorney are "supervisory rather than constitutionally based requirements").